```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MEDITERRANEAN SHIPPING COMPANY         :
(USA) INC.,
                                       :
                Plaintiff,                REPORT AND
                                       :  RECOMMENDATION
      -v.-
                                       :  13 Civ. 6489 (JPO) (GWG)

TJD INTERNATIONAL INC.,                :

                Defendant.             :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Mediterranean Shipping Company (USA), Inc. ("Mediterranean Shipping") seeks a default judgment against defendant TJD International Inc. ("TJD"). Mediterranean Shipping's application should be granted as set forth below.

I.   BACKGROUND

Mediterranean Shipping filed a complaint on September 13, 2013 (Docket # 1), and an amended complaint on October 21, 2013 (Docket # 2) ("Am. Compl."). Jurisdiction was based on admiralty. See id. ¶ 1; 28 U.S.C. § 1333. The amended complaint alleged that TJD breached two shipping contracts it entered into with Mediterranean Shipping. See id. ¶¶ 15, 22. After TJD failed to respond to the complaint, Mediterranean Shipping obtained a Clerk's Certificate of Default on February 18, 2014 (Docket # 6). Mediterranean Shipping moved for a default judgment against TJD, see Motion for Entry of a Default Judgment, filed Apr. 25, 2014 (Docket # 7), and submitted a declaration and documentary evidence supporting its request for an award of damages, see Declaration of Lindsay A. Sakal in Support of Plaintiff's Motion for Default Judgment Against TJD International Inc., filed Apr. 25, 2014 (Docket # 8) ("First Sakal Decl.").

1

On May 15, 2014, Judge Oetken entered an Order directing that Mediterranean Shipping shall have judgment against TJD and referring the case to the undersigned for an inquest. (Docket # 9); see also Order of Reference, dated May 15, 2014 (Docket # 10). On May 19, 2014, this Court issued an Order giving TJD until June 30, 2014, to oppose the damages claimed by Mediterranean Shipping in its submissions. See Scheduling Order (Docket # 11), ¶ 2. The May 19 Order also notified the parties that the Court would conduct the damages inquest based solely on the written submissions of parties, unless a party sought an evidentiary hearing. Id. ¶ 3. The May 19 Order set June 30, 2014, as the deadline for the parties to write a letter to the Court requesting such a hearing. Id. TJD did not oppose Mediterranean Shipping's claim for damages or make any other submission to the Court, and neither party has requested an evidentiary hearing.

To support its claim for damages, Mediterranean Shipping offered the declaration of Lindsay A. Sakal. See Motion for Entry of a Default Judgment, filed Apr. 25, 2014 (Docket # 7). However, this declaration did not contain all of the information necessary to conduct the damages inquest. Therefore, by Order dated November 6, 2014 (Docket # 14), the Court directed Mediterranean Shipping to provide additional information. In response, Mediterranean Shipping provided some of this information, see Declaration of Lindsay A. Sakal in Response to November 6, 2014 Order, filed Dec. 1, 2014 (Docket # 16) ("Second Sakal Decl."), and waived its claim for damages that related to other information that had been sought by the Court, see Letter from Lindsay A. Sakal, filed Jan. 8, 2015 (Docket # 19) ("Sakal Letter").

The default entered in this case establishes TJD's liability. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) (citation omitted). Thus, the only issue that remains is whether Mediterranean Shipping has provided adequate support for the relief it seeks.

2

See Kuruwa v. Meyers, 823 F. Supp. 2d 253, 256 (S.D.N.Y. 2011); see also GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes defendant's liability . . . and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted).

However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). Rather, "the district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. (citation omitted). Any damages award must be based on admissible evidence. See, e.g., Braccia v. D'Blass Corp., 2011 WL 2848146, at *3 (S.D.N.Y. June 13, 2011). Specifically, "the plaintiff bears the burden of proof and must introduce admissible evidence to establish, with reasonable certainty, a basis for the amount of damages it seeks." E.g., U.S. ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envtl. Universal Servs., Inc., 2014 WL 4652712, at *3 (S.D.N.Y. Sept. 2, 2014) (citing House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010)); see Prince of Peace Enters., Inc. v. Top Quality Food Mkt., LLC, 2014 WL 793084, at *3 (S.D.N.Y. Feb. 28, 2014) (damages must be "established through admissible evidence, not simply the assertions of those seeking damages") (citations omitted).

Neither party has requested an evidentiary hearing, and TJD has not made any submission to the Court. Therefore, no hearing was required.

II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

In light of TJD's default, all of Mediterranean Shipping's properly pleaded allegations,

3

except for those relating to damages, are accepted as true. See, e.g., City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004)); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.") (citation omitted).

    A.    Facts Related to Liability

        1.    Facts Common to Both Contracts

Mediterranean Shipping is a common carrier of commercial cargo by ocean vessel, operating in foreign commerce of the United States. Am. Compl. ¶ 5. It is a corporation organized under the laws of New York, which also has its principal place of business in New York. Id. ¶ 3. TJD is a corporation organized and operating under the laws of New Jersey, with a principal place of business in New Jersey. Id. ¶ 4.

In January 2012, the parties entered into two separate shipping contracts embodied in bills of lading.[1] See id. ¶¶ 10, 17. Both bills of lading provided that Mediterranean Shipping would convey for TJD shipping containers packed with educational materials. See id. Mediterranean Shipping was to supply the empty containers, which TJD was to load, seal, and return to Mediterranean Shipping. Id. ¶¶ 12, 19. Mediterranean Shipping would then ship the containers by ocean vessel to their destinations. See id.

Mediterranean Shipping maintains a "standard form bill of lading contract." First Sakal

---

[1] Mediterranean Shipping issued the bills of lading on behalf of its principal, Mediterranean Shipping Company S.A. First Sakal Decl. ¶ 9.

Decl. ¶ 9; see Standard Terms & Conditions of the Contract of Carriage (annexed as Ex. A to Am. Compl. ("Contract of Carriage")).[2] Each of the bills of lading at issue here incorporated the terms of this contract. See Contract of Carriage at 1; Bill of Lading No. MSCUBT561244 (annexed as Ex. B to Am. Compl. ("Jan. 8 Bill of Lading")); Bill of Lading No. MSCUBT563117 (annexed as Ex. D to Am. Compl. ("Jan. 20 Bill of Lading")). The Contract of Carriage provides:

> The Carrier allows a period of free time for the use of the Containers and other equipment in accordance with the Tariff . . . . Free time commences from the day the Container and other equipment is collected by the Merchant or is discharged from the Vessel or is delivered to the Place of Delivery as the case may be. The Merchant is required and has the responsibility to return to a place nominated by the Carrier the Container and other equipment before or at the end of the free time allowed at the Port of Discharge or the Place of Delivery. Demurrage, per diem and detention charges will be levied and payable by the Merchant thereafter in accordance with the Tarriff.

Contract of Carriage cl. 14.8. Additionally, it states that "[t]he Carrier shall be entitled to an indemnity from the Merchant for all costs whatsoever incurred, including legal costs, for the cleaning and disposal of Goods refused and/or abandoned by the Merchant." Id. cl. 20.4.

Mediterranean Shipping maintains tariffs for each of the places of delivery. See Am. Compl. ¶ 6; First Sakal Decl. ¶¶ 25, 27. These tariffs state the relevant free time and demurrage charges. See First Sakal Decl. ¶¶ 25-28. The bills of lading provide that the terms of the relevant tariffs are binding on the parties who enter into those contracts. See Jan. 8 Bill of Lading; Jan. 20 Bill of Lading.

### 2. The January 8, 2012 Bill of Lading

The parties entered into the first of the two shipping contracts on January 8, 2012. Am.

---

[2] Under the bill of lading contract, Mediterranean Shipping is referred to as the "Carrier," and TJD is a "Merchant." See Contract of Carriage cl. 1, Definitions.

Compl. ¶ 10. Per this bill of lading, Mediterranean was to carry for TJD two shipping containers — one 40-foot dry van container and one 20-foot dry van container — containing a number of pallets of "donated books and educational materials." Id. ¶¶ 10, 12 (capitalization omitted). The containers were to be carried from Lawrence, Massachusetts, through the port of Boston, for delivery at the port of Jakarta, Java, Indonesia. Id. ¶ 10.

Mediterranean Shipping provided the two empty containers to TJD, which loaded the cargo into the containers, sealed them, and returned them to Mediterranean Shipping. See id. ¶ 12. Mediterranean Shipping carried the containers to their destination in Jakarta, where they were discharged on March 14, 2012. See id. ¶¶ 12-13. Mediterranean Shipping then gave notice to TJD's consignee and its "notify party" that the containers were ready for pickup. Id. ¶ 13. Mediterranean Shipping also gave notice to TJD that TJD would be charged for its failure to ensure that the container was picked up, emptied, and returned to Mediterranean Shipping. Id. ¶ 14. Nonetheless, TJD did not pick up the containers. Id. ¶ 15. Indeed, the containers remained at the terminal in Jakarta until at least December 1, 2014. See id.; First Sakal Decl. ¶ 7; Second Sakal Decl. ¶ 19. During this time, the containers accrued demurrage and local port charges. See Am. Compl. ¶¶ 15-16.

        3.       The January 20, 2012 Bill of Lading

The parties entered into the second of the two shipping contracts on January 20, 2012. Am. Compl. ¶ 17. As expressed in the bill of lading, Mediterranean was to carry for TJD one 20-foot container packed with "10 pallets [of] donated educational materials." Id. (capitalization omitted). The container was to be carried from Lawrence, Massachusetts, through the port of Boston, for delivery at the port of Mombasa, Kenya. Id. Mediterranean Shipping provided an empty 20-foot dry van container to TJD, which loaded the goods, sealed the container, and

returned it to Mediterranean Shipping. See id. ¶ 19. Mediterranean Shipping carried the container to its destination in Mombasa, where it arrived on April 19, 2012. See id. ¶¶ 19-20. Mediterranean Shipping gave notice to TJD's consignee and "notify party" that the container was ready for pickup. Id. ¶ 20. Mediterranean later gave notice to TJD that the container had not cleared the terminal at Mombasa within the time allotted by the tariff and that TJD would be charged for its failure to ensure that the container was picked up, emptied, and returned to Mediterranean Shipping. Id. ¶ 21. TJD did not pick up the container until November 8, 2012, up to which point the container had accrued demurrage and local port charges. See id. ¶ 22.

    B.    Damages

Mediterranean Shipping initially sought to recover from TJD damages for both the January 8, 2012 and the January 20, 2012 bills of lading. See First Sakal Decl. ¶¶ 33, 37. However, it was unable to provide evidence of the Mombasa tariff for the relevant time period. See Second Sakal Decl. ¶ 5(b). Accordingly, it chose to waive any damages associated with the January 20 bill of lading and now seeks damages only under the January 8 bill of lading. See Sakal Letter at 1. Mediterranean Shipping also requests that the Court award pre- and postjudgment interest. See First Sakal Decl. ¶¶ 39-40. Finally, it seeks an award of attorney's fees in the amount of $19,650.00, see Sakal Letter at 1, and costs in the amount of $539.30, see id.; First Sakal Decl. ¶ 36.

        1.    Compensatory Damages

TJD breached its contract with Mediterranean Shipping and thus Mediterranean Shipping is entitled to recover damages "such as may reasonably be considered either arising naturally . . . from such breach . . . or such as may reasonably be supposed to have been in the contemplation of both parties . . . as the probable result of the breach." Atl. Forwarding, Ltd. v. MSL Int'l,

7

L.L.C., 2013 WL 5345346, at *4-5 (S.D.N.Y. Sept. 24, 2013) (alterations in original) (quoting Hadley v. Baxendale, 9 Exch. 341, 156 Eng. Rep. 145 (1854)). The Contract of Carriage itself provides for damages in the amount of demurrage charges and other costs. See cl. 14.8. To support the damages it claims, Mediterranean Shipping offers two sworn declarations from Lindsay Sakal, one of its attorneys, made upon personal knowledge. See First Sakal Decl. ¶ 1; Second Sakal Decl. ¶ 1. Annexed to the first declaration as exhibits are copies of the bills of lading entered into by the parties and a copy of the Contract of Carriage. This evidence shows that the parties entered into a binding contract providing that Mediterranean Shipping would be entitled to damages in the amount of demurrage plus applicable fees in the event of TJD's breach, set in accordance with the applicable tariff rate. Annexed to the second declaration is a copy of the tariff rate for Jakarta effective from April 1, 2005, see Ex. B to Second Sakal Decl., and a copy of the higher tariff rate effective from November 1, 2012, see Ex. A to Second Sakal Decl. Mediterranean Shipping explains that it seeks the lower of these rates for the January 8 Bill of Lading, because its discharge date was before November 1, 2012. See Second Sakal Decl. ¶ 6; Ex. C to Second Sakal Decl. (letter from Mediterranean Shipping to its customers explaining this rate-increase scheme). As of December 1, 2014, the containers had not been picked up from the point of discharge at Jakarta, and Mediterranean Shipping states that demurrage continued to accrue for those containers through that date. See Second Sakal Decl. ¶¶ 19-20. Therefore, we base our damages calculation on the evidence that Mediterranean Shipping has provided of the tariff rate for Jakarta effective as of April 1, 2005, calculated for the time period from March 14, 2012 through December 1, 2014.

     For both the 40-foot and the 20-foot containers, Mediterranean Shipping allowed a seven-day free period after the date of discharge, during which time no demurrage charges

accrued. See Ex. B to Second Sakal Decl.; Contract of Carriage cl. 14.8. Mediterranean Shipping seeks a reduced tariff rate for five days following that free period: for the 40-foot container, the daily rate was $20, and for the 20-foot container, it was $10. See Ex. B to Second Sakal Decl. After this five-day period, the daily rate for the 40-foot container increased to $40, and the daily rate for the 20-foot container increased to $20. See id.

Based on the evidence provided of the free periods and tariff rates, the damages for the two containers discharged at Jakarta under the January 8 Bill of Lading are calculated as follows:

> 40-Foot Container:
>
> > 7-day free period (3/14/12 to 3/20/12) at $0 per day = $0
> >
> > 5-day period (3/21/12 to 3/25/12) at $20 per day = $100
> >
> > Remaining period (3/26/12 to 12/1/14) at $40 per day = $39,200
> >
> > Total for 40-foot container = $39,300
>
> 20-Foot Container:
>
> > 7-day free period (3/14/12 to 3/20/12) at $0 per day = $0
> >
> > 5-day period (3/21/12 to 3/25/12) at $10 per day = $50
> >
> > Remaining period (3/26/12 to 12/1/14) at $20 per day = $19,600
> >
> > Total for 20-foot container = $19,650
>
> Total for both containers = $58,950

Thus, Mediterranean Shipping is entitled to $58,950 in damages based on demurrage charges for the containers discharged at Jakarta under the January 8, 2012 bill of lading.[3]

---

[3] We have used December 1, 2014, as the end date because there is no evidence that charges have accrued since this date, and a letter from plaintiff after this date, see Sakal Letter, adhered to its request that the amounts be awarded as had been calculated as of December 1, 2014.

      2.      Prejudgment Interest

Mediterranean Shipping requests that the Court award it prejudgment interest on any award of damages it receives.  See First Sakal Decl. ¶¶ 39-40.  "[I]n admiralty cases prejudgment interest should be granted in the absence of exceptional circumstances."  Magee v. U.S. Lines, Inc., 976 F.2d 821, 823 (2d Cir. 1992) (quoting Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293, 310 (2d Cir. 1987)) (internal quotation marks omitted), cited in Muller Boat Works, Inc. v. Unnamed 52′ House Barge, 464 F. Supp. 2d 127, 149 (E.D.N.Y. 2006).  The proper rate of prejudgment interest to be awarded "rests firmly within the sound discretion of the trial court."  Ingersoll Milling Mach., 829 F.2d at 311.  Because a plaintiff who is awarded damages "is entitled to the income which the monetary damages would have earned, [which] should be measured by interest on short-term, risk-free obligations," Indep. Bulk Transp., Inc. v. Vessel Morania Abaco, 676 F.2d 23, 27 (2d Cir. 1982), courts often award prejudgment interest rates in accordance with the average yield of Treasury Bills, see, e.g., Zim Am. Integrated Shipping Servs. Co., LLC v. Aegis Trading & Shipping Co., 2014 WL 5286102, at *2-3 (S.D.N.Y. July 23, 2014); Mediterranean Shipping Co., (USA) Inc. v. Int'l Freight Servs., 2014 WL 1244274, at *5 (S.D.N.Y. Mar. 26, 2014); Muller Boat Works, 464 F. Supp. 2d at 149.

     Here, there are no exceptional circumstances weighing against an award of prejudgment interest.  Therefore, Mediterranean Shipping is entitled to such an award.  Mediterranean does not specify a date from which these damages should run.  See First Sakal Decl. ¶ 40 (specifying a date only for damages relating to the container sent to Mombasa, for which no damages are being sought).  Accordingly, we believe interest should run from the mid-point date of the period for which damages accrued, or July 27, 2013.  See, e.g., Manzo v. Sovereign Motor Cars, Ltd., 2010 WL 1930237 at *12 n.21 (E.D.N.Y. May 11, 2010) ("[T]he midpoint date is a practical

method of accounting for the fact that [plaintiff's] damages accrued over a period of time . . . ."), aff'd, 419 F. App'x 102 (2d Cir. 2011). We will also will award a rate of .11% per annum, which is a rate recently awarded in this district to cover a similar time period. See Zim Am. Integrated Shipping Servs. Co., LLC, 2014 WL 5286102, at *2 (awarding interest rate in accordance with 52-week Treasury Bill rate as of May 19, 2013). This results in the accrual of prejudgment interest at a rate of $0.18 per day starting July 27, 2013.

        3.        Postjudgment Interest

Mediterranean Shipping seeks an award of postjudgment interest pursuant to 28 U.S.C. § 1961(a), commencing from the date of judgment. See First Sakal Decl. ¶ 40. Postjudgment interest accrues by operation of law, see 28 U.S.C. § 1961(a), and thus it is not necessary for a court to reference it in its judgment, see Nationalist Movement v. City of York, 340 F. App'x 91, 94 (3d Cir. 2009); Miller v. Artistic Cleaners, 153 F.3d 781, 785 (7th Cir. 1998). Accordingly, we do not address this request further.

        4.        Attorney's Fees and Costs

The Contract of Carriage provided that Mediterranean Shipping "shall be entitled" to all costs incurred as a result of TJD refusing or abandoning the shipped goods, "including legal costs." Contract of Carriage, cl. 20.4. The Second Circuit has held that "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992) (internal quotation marks and

citation omitted)[4]; accord McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993) (in a contractual claim for attorney's fees, the court "is to determine a reasonable amount of fees"). Mediterranean Shipping seeks to recover as fees the one-third of the total damages it claims on the ground that its attorneys "undertook this matter on a one-third contingency fee arrangement." First Sakal Decl. ¶ 36. However, Mediterranean Shipping has provided no case law or argument as to why it is reasonable for TJD to be liable for fees based on the contingent fee arrangement made in this case.

Accordingly, the Court finds it reasonable to use the "lodestar" method for determining the fees in this matter, which Mediterranean Shipping has sought on an "alternative[]" basis. Id. ¶ 38. Mediterranean Shipping has provided contemporaneous time records of its attorneys showing an expenditure of 32.9 hours. See Ex. 10 to First Sakal Decl. at 4. With the rates charged by plaintiff's attorneys, see First Sakal Decl. ¶ 38, the total amount sought is $9,912. We find these hours and the associated rates to be reasonable. In addition, Mediterranean Shipping is entitled to reimbursement for its costs, including the filing fee and other expenditures, totaling $539.30. See First Sakal Decl. ¶ 36; Ex. 10 to First Sakal Decl. at 4 (record of costs for attorney travel, copying, service, and research).

III.   CONCLUSION

For the foregoing reasons, Mediterranean Shipping should be awarded damages in the

---

[4] Where, as here, a dispute over a maritime contract is not "inherently local," federal law controls the contract's interpretation. Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 22-23 (2004) (citing Kossick v. United Fruit Co., 365 U.S. 731, 742 (1961). While Diamond D Enterprises USA, Inc. involved an interpretation of New York law, we find it persuasive here because, in maritime cases, courts "will look to common-law principles of contract interpretation, and will occasionally cite to New York case law to the extent it elucidates such common-law principles." Nippon Yusen Kaisha v. FIL Lines USA Inc., 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013).

amount of $58,950, attorney's fees in the amount of $9,912, and costs in the amount of $539.30, for a total award of $69,401.30 plus prejudgment interest running at the rate of $0.18 per day from July 27, 2013, until the date judgment is entered.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. J. Paul Oetken at 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Oetken. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) (citations omitted).

Dated: February 10, 2015
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

T.J.D. International, Inc.
150 River Road Bldg. G, Unit 4A
Montville, NJ 07045